

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DARRELL GLEN LEITH, )
)
Plaintiff, )
)
v. ) 1:16-cv-01565 (IDD)
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
Defendant. )
)

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 20, 25). Pursuant to 42 U.S.C. § 405(g), Darrell Glen Leith ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34. For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. No. 20) is **DENIED**, and Defendant's Motion for Summary Judgment (Dkt. No. 25) is **GRANTED**.

### I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on October 11, 2012, alleging disability since January 1, 2007, due to degenerative disc disease, degenerative joint disease, coronary artery disease, and diabetes. (Administrative Record ("R.") 732–33, 773–77.) After the state agency twice denied Plaintiff's claim, Plaintiff requested an administrative hearing. (R. 660–70.) The ALJ held a hearing on June 24, 2015. (R. 122–57.) On July 30, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 31–50.)

On October 13, 2016, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). (R. 1–7.) Having exhausted his administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on December 19, 2016. (Dkt. No. 1.) The parties filed cross-motions for summary judgment, and this matter is ripe for disposition. (Dkt. Nos. 20, 25.)

## II.     FACTUAL BACKGROUND

Plaintiff was born on April 23, 1965, and was forty-one years old at his alleged onset date. (R. 638.) He has a bachelor's degree in accounting and previously worked as an accountant and assistant controller. (R. 129–31.)

In his most recent function report, Plaintiff stated that he could perform limited household chores, go out by himself driving short distances, listen to music, watch television, care for his personal needs and his two young children, prepare simple meals, and shop for food. (R. 784–90.) Plaintiff reported not being able to drive long distances and difficulty with walking and sitting for long periods of time, sleeping soundly, exercising, and concentrating on tasks. (*Id.*)

### A. Medical Evidence

#### 1. Degenerative Disc Disease

On July 2, 2007, Plaintiff was seen by Dr. Corbin Eissler for ongoing back pain in Plaintiff's lower back. (R. 928.) Dr. Eissler noted that Plaintiff suffered tenderness and tightness in his back and along the paraspinal muscles. (R. 929.) On August 2, 2012, Dr. Brian O. Stephens diagnosed Plaintiff with cervical disc degeneration. (R. 1042.) Dr. Stephens noted decreased disc space centered at Plaintiff's C4-C5 junction. (R. 1043.) Dr. Stephens also noted

that Plaintiff was "now able to look over both shoulders . . . touching chest with chin." (R. 1043.)

## 2. Degenerative Joint Disease

On November 16, 2007, Plaintiff was seen by Joan R. Ellmore, a nurse practitioner at Kaiser Permanente, in connection with complaints of knee pain. (R. 922.) Ms. Ellmore noted that Plaintiff has "always had knee problems from sports as a teenager. Knees used to buckle and surgery was recommended at one point due to swelling of the left knee." (*Id.*) Plaintiff represented to Ms. Ellmore that he fell when his right knee collapsed and that taking Motrin did not relieve Plaintiff's pain; however, Plaintiff's use of Toradol helped relieve some of his pain. (R. 922-23.) Plaintiff declined a knee immobilizer because keeping his knee straight caused more pain and decided instead to use crutches that he already owned. (R. 923)

On February 7, 2008, Plaintiff was seen by Dr. David E. Page, who diagnosed Plaintiff with trochanteric bursitis and arthralgia of the knee. (R. 918.) Later, on February 19, 2008, Plaintiff visited Dr. Roberta A. Kasman, who diagnosed Plaintiff with osteoarthritis of the knee and hypertension, among other things. (R. 916.) Dr. Kasman noted that Plaintiff suffered intermittent knee pain, which was worse with activity to the point Plaintiff could not walk sometimes. (*Id.*) Dr. Kasman also noted that Plaintiff had occasional swelling, pain in his hips and fingers, and no significant relief from ibuprofen. (*Id.*) Plaintiff had not undergone physical therapy but "takes vicodin as needed." (*Id.*)

On April 14, 2008, Plaintiff had an appointment with a physical therapist, Sheetal Y. Jhaveri.[1] (R. 912.) Plaintiff reported activities of recumbent biking and weight training with his legs. (*Id.*) Plaintiff also reported his only medication was Aleve. (*Id.*) Plaintiff described his knee pain level between 4 and 6 out of 10. (*Id.*) Mr. Jhaveri observed a mild patellar tilt bilaterally but

---

[1] The Court notes a contradiction in the Record. Dr. Kasman stated in her October 2008 progress notes that Plaintiff was "referred to physical therapy . . . but never made appointments." (R. 898.) However, Plaintiff's visit to Mr. Jhaveri suggests otherwise. (R. 912.)

3

noted that Plaintiff's gait was within functional limits. (*Id.*) Mr. Jhaveri instructed Plaintiff in a home exercise program and advised him to avoid strenuous weight training. (R. 913.)

In October 2008, Plaintiff opted for lidocaine injections to his hips. (R. 898.) Then on December 30, 2009, Plaintiff was again seen by Dr. Eissler for continued hip and knee pain. (R. 1156.) Plaintiff continued to seek treatment for his knee pain, and on June 7, 2011, was examined by Dr. Narayanan, who found that Plaintiff had full range of motion in his left knee with no effusion, swelling, point tenderness, or drawer signs. (R. 1098.)

On July 7, 2011, Dr. Kasman again examined Plaintiff for knee and hip pain. (R. 885.) Dr. Kasman concluded that Plaintiff's left knee was not tender and that Plaintiff had full range of motion. (R. 886.) Then on November 2, 2011, Plaintiff saw Dr. Narayanan for persistent knee pain. (R. 1083.) Plaintiff reported that his pain worsened with increased activity but that Percocet helps. (*Id.*)

### 3. Coronary Artery Disease

On October 29, 2008, Plaintiff was treated at the emergency room for atrial fibrillation. (R. 818.) Plaintiff reported dizziness and lightheadedness especially when active. (*Id.*) On June 6, 2010, and again on April 18, 2011, Plaintiff sought treatment for chest pains. (R. 871, 1103–04.) However, on November 2, 2011, Dr. Narayanan's examination of Plaintiff revealed that Plaintiff's lungs were clear to auscultation and that Plaintiff's heart rate was regular without rubs or murmurs. (R. 1083–84.)

### 4. Diabetes

At almost every medical appointment, Plaintiff's diabetes was noted as controlled. (R. 897–1202.)

### 5. Opinion Evidence

In August 2012, Dr. Narayanan opined that Plaintiff's knee pain limits Plaintiff's daily activities. (R. 896.) Specifically, Dr. Narayanan opined that Plaintiff's ability to pursue his usual occupation is limited and that Plaintiff's knee pain has severely impacted Plaintiff's quality of life. (*Id.*) In March 2013, Dr. Narayanan further opined that Plaintiff's knee and hip pain "are disabling and require medication for management," and Plaintiff's "ability to be employed is severely restricted due to his problems." (R. 1203–04.)

On December 26, 2013, Dr. Narayanan completed a Multiple Impairment Questionnaire in which he indicated he began treating Plaintiff in February 2011 and most recently had treated Plaintiff in February 2013. (R. 1240–47.) In the questionnaire, Dr. Narayanan listed Plaintiff's diagnoses as chronic pain, osteoarthritis of the knees, coronary artery disease, hip pain, and neck pain (R. 1240) but noted that Plaintiff could sit, stand, and walk for up to one hour in an eight-hour day. (R. 1042.) Dr. Narayanan also opined that Plaintiff needed to move around every thirty minutes and that Plaintiff could not stand or walk continuously in a work setting. (R. 1042–43.) Dr. Narayanan further noted that Plaintiff had significant limitations in doing repetitive reaching, handling, fingering, and lifting due to neck pain and was essentially precluded from using his hands and arms for all fine and gross manipulative activities. (R. 1243–45.) However, Dr. Narayanan opined that Plaintiff could frequently lift up to five pounds and occasionally carry up to 20 pounds. (R. 1243.) Overall, Dr. Narayanan opined that Plaintiff could not work full-time due to physical impairments and anxiety, that Plaintiff's impairments would last at least twelve months, and that Plaintiff's limitations dated back to July 2007. (R. 1246.)

Dr. R.S. Kadian, a state agency physician, considered Plaintiff's case at the initial administrative level and concluded that Plaintiff was capable of performing light exertional

5

work; could frequently climb ramps and stairs; could also balance, stoop, kneel, crouch, crawl, and occasionally climb ladders, ropes, and scaffolds. (R. 638–45.) Then at the reconsideration phase of the administrative process, Dr. Tony Constant considered Plaintiff's case. (R. 647–56.) Dr. Constant noted that Plaintiff has diabetes but also noted that the diabetes "has not resulted in organ failure or other complications." (R. 653.) Dr. Constant rated Plaintiff's postural limitations similar to Dr. Kadian's rating.[2] (R. 653.)

Additionally, Plaintiff received psychiatric treatment from Dr. Kristie D. Mitchell on January 28, 2013, and October 28, 2013, for complaints of anxiety, panic attacks, and "difficulty with paying close attention to details," among other things. (R. 1248–57.) Dr. Mitchell opined that Plaintiff's symptoms have the potential to be "well managed with psychotropic medications and behavioral techniques." (R. 1248.) Dr. Mitchell also opined that Plaintiff's symptoms limit his ability to work at a fast-paced level but noted that Plaintiff is not limited from performing all full-time competitive work. (R. 1249.) Notably, Dr. Mitchell opined that Plaintiff is "capable of moderate stress" based on Plaintiff's ability to tolerate the stress associated with starting a home business. (R. 1256.) Dr. Mitchell noted that Plaintiff's impairments would likely cause Plaintiff to be absent from work approximately two to three times a month. (R. 1257.)

### B. Administrative Hearing Testimony

On June 24, 2015, Plaintiff testified before the ALJ. (R. 122–23.) Plaintiff testified he lives with his wife and two children, ages ten and eight at the time of the hearing. (R. 128.) Plaintiff has a bachelor's degree in accounting and prior to 2007 worked as an accountant. (R. 129–30.) Plaintiff testified that when he stopped working, he was caring for his toddler son and

---

[2] Plaintiff asserts that "Dr. Constant indicates 'His joint pain especially at the hips, knees and ankles are disabling and require medication for mgmt. His ability to be employed is severely restricted due to his problems[.]" (emphasis omitted.) (Dkt. No. 30 at 5.) However, the Court finds that Dr. Constant was summarizing Dr. Narayanan's opinion rather than independently concluding Plaintiff has disabling limitations. (*See* R. 652.)

infant daughter. (R. 137–38.) Plaintiff changed diapers and fed the children but was not able to "run around" in the yard with them. (R. 138.) Plaintiff has not worked since the date of his alleged onset but did attempt to operate a home business selling vinyl records online. (R. 130.) However, Plaintiff could not complete the physical activity associated with the business such as "going to thrift shops and yard sales, flea markets and carrying records"; nor was he able to sit in front of a computer for "long periods of time" because of migraines and neck pain. (*Id.*) Therefore, Plaintiff did not continue operating his home business, but the Record is unclear when Plaintiff ceased operations. (*Id.*)

Plaintiff testified that his migraines, social anxiety, trouble focusing, and pain in his legs, knees, and hips limit him from working. (R. 132–33.) Plaintiff testified he does household chores but with difficulty because he has to sit periodically and also leaves "little jobs around the house" unfinished because of his trouble with focusing. (*Id.*) Plaintiff explained that when he worked as an accountant he "managed" his focusing-problem and social anxiety. (R. 133, 135.) At the time of the hearing, Plaintiff had been using a cane to prevent him from falling for approximately three years and six months. (R. 133–34.)

A vocational expert, Robert Lester, also testified at the hearing. (R. 151–56.) The ALJ's hypotheticals assumed an individual of the same age, education background, and work experience as Plaintiff. (R. 152–53.) For the first hypothetical, the ALJ instructed the vocational expert to assume an individual limited to light work who requires changing between sitting and standing positions every twenty minutes; could stand or walk for at least two hours in an eight-hour work day; could not climb ladders, ropes, or scaffolds; could not crawl; could occasionally climb ramps and stairs; and could occasionally stoop, kneel, crouch and frequently balance. (R. 153.) The vocational expert testified that the hypothetical individual would not be able to

perform Plaintiff's past work as an accountant but could perform light work such as a general clerical assistant, router, and laundry sorter. (R. 154.) The vocational expert testified that, collectively, the three examples comprise approximately 185,000 positions in the national economy. (*Id.*) For the second hypothetical, the ALJ instructed the vocational expert to assume the same factors and limitations as the first hypothetical and to further assume that the individual could not engage beyond occasional and superficial interaction with coworkers and the public; could not work at a production-rate pace; and limited the individual to performing simple, routine tasks. (R. 154–55.) The vocational expert testified that his answer would remain the same for both hypotheticals. (R. 155.) For the final hypothetical, the ALJ instructed the vocational expert to assume the same factors and limitations as the previous two hypotheticals and to further assume that the individual would be off-task at least 15% of the time. (*Id.*) The vocational expert testified that such an individual would not be able to maintain employment. (*Id.*)

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether that decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance. *Craig*, 76 F.3d at 589. If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In

reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

This Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015); *Hammond v. Colvin*, No. 1:12-cv-01177, 2013 WL 5972432, at *6 (E.D. Va. Nov. 8, 2013). Courts will disregard any errors that "do not affect any party's substantial rights." Fed. R. Civ. P. 61 (harmless error); *see also Morris v. Bowen*, 864 F.2d 333, 335–36 (5th Cir. 1988). With this standard in mind, the Court evaluates the ALJ's findings and decision.

## IV. ANALYSIS

### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in

substantial gainful activity ("SGA");[3] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[4] and (5) has an impairment that prevents him from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### B. ALJ's Findings

In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. At step one, the ALJ determined that Plaintiff has not engaged in SGA since January 1, 2007, the alleged onset date of Plaintiff's disability. (R. 36.) At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: obesity; coronary artery disease; degenerative disc disease; degenerative joint disease of the hips and knees; and diabetes mellitus. (*Id.*) In evaluating the effect these impairments have on Plaintiff's functioning, the ALJ concluded that the impairments cause significant limitations in the claimant's ability to perform basic work activities and have lasted or are expected to last 12 months. (R. 36–37.) The ALJ found that Plaintiff's other alleged impairments are non-severe; namely, Plaintiff alleged to suffer from migraines and anxiety. (R. 37.) At step three, the ALJ found that none of these impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 38–39.) The ALJ discussed in detail Plaintiff's medical history and impairments and compared them to the level of severity

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

contemplated in the SSA's Listing of Impairments. (*Id.*) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. 44.) At step five, the ALJ determined that Plaintiff had the residual functioning capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. 404.1567(b) except: the claimant could perform work activities that allowed him to alternate his position between sitting and standing every 20 minutes if he wished, but he could stand/walk for at least two hours each 8-hour workday. The claimant retained the ability to perform work activities that required no climbing of ladders, ropes or scaffolds or crawling, but he could balance frequently, and stoop, kneel, crouch and climb ramps and stairs occasionally.

(R. 39.) Therefore, the ALJ determined that Plaintiff has the capacity to perform light work and that based on the application for DIB filed on October 11, 2012, Plaintiff was not disabled under the Act. (R. 45–46.)

### C. Cross-Motions for Summary Judgment

Plaintiff raises fourteen claims of error in this action:

> 1. The ALJ decision is not based on substantial evidence . . . . [;] 2. The ALJ did not properly and fully develop the record . . . . [;] 3. The ALJ failed to substantiate a serious mental impairment . . . . [;] 4. The ALJ failed to substantiate serious diabetic impairment . . . . [;] 5. The ALJ decision and/or opinion concerning Mr. Leith's credibility is not fully in accordance with SSR 96 7P Titles II and XVII . . . . [;] 6. The ALJ's statements regarding Mr. Leith's medical non-compliance are not consistent with substantive evidence of compliance contained in the medical record . . . . [;] 7. The ALJ failed to abide by the treating physicians rule . . . . [;] 8.The weight accorded to the SSA Medical Consultant by the ALJ is in-part unclear and ambiguous . . . . [;] 9. The ALJ failed to properly define the sit-stand option . . . . [;] 10. The entire basis upon which the ALJ assessed Mr. Leith's functional capabilities is at least in-part unclear and ambiguous . . . . [;] 11. The ALJ's finding that Mr. Leith is non-disabled . . . was based in-part upon improper subjective opinion by the ALJ . . . . [;] 12. . . . [T]he ALJ's decision of non-disabled is based on piecemeal analysis of the evidence . . . . [;] 13. Mr. Leith's statements regarding intensity and persistence of pain and other symptoms and supporting, documented evidence cooberrating [*sic*] these statements were respectfully not afforded appropriate weight by the ALJ . . . . [;] 14. The ALJ failed to properly identify Mr. Leith's residual functioning capacity and limitations on a function-by-function basis . . . .

(Pl. Br. 1–23.) Defendant seeks summary judgment on the ground that the ALJ's decision is supported by substantial evidence. Defendant's briefing focuses on disputing the arguments propounded by Plaintiff and combines Plaintiff's objections based on similarity of Plaintiff's arguments supporting the objections. Therefore, the undersigned will address each of Plaintiff's objections to the ALJ's decision according to the similarity of each objection.

### 1. Applicable Law

In reviewing the Commissioner's decision to deny benefits, this Court must determine whether the ALJ's decision was supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," a reviewing court cannot find that the ALJ's decision is supported by substantial evidence. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.).

When evaluating medical opinion evidence, the ALJ must assign the evidence weight based on the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his or her opinion; (4) the consistency of the opinion; (5) whether the physician is a specialist in the area in which he or she is rendering an opinion; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c), (e). The ALJ need only

be specific enough to allow a reviewing court to determine the weight given to a medical opinion and the reasons for that weight. *See* SSR 96-2p, 1996 WL 374188, at *5 (S.S.A.).

However, "an ALJ is not required to discuss each piece of evidence" included in the record. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Furthermore, an ALJ's "failure to cite specific evidence does not establish that the ALJ failed to consider it." *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004); *see also Gullace v. Astrue*, No. 1:11cv0755, 2012 WL 691554, at *24 (E.D. Va. Feb. 13, 2012) (citing both *Black* and *Phillips*).

As previously discussed, this Court reviews an ALJ's decision under the harmless error analysis. An ALJ's failure to find an impairment severe at the second step "is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process." *Williams v. Colvin*, 1:14-cv-1349, 2016 WL 1258594, at *8 (E.D. Va. Mar. 2, 2016); *Cook ex rel. A.C. v. Colvin*, No. 2:11-cv-362, 2013 WL 1288156, at *4 (E.D. Va. Mar. 1, 2013).

### a. Evaluation of Errors 1 and 11

In his first claim of error, Plaintiff argues that the ALJ's decision "is not based on substantial evidence as required by, e.g. 42 U.S.C. 405(g) and 20 CFR 404.1512." (Pl. Br. 1.) However, Plaintiff does not explain his argument in his brief and reply. Instead, Plaintiff states, "Please see ALJ's statements and decision and evidence submitted herein which provides a reasonable basis on which to conclude that the ALJ did not fully develop the record based upon substantial evidence." (*Id.* 1–2.) Plaintiff then moves to his second contention without providing particular statements by the ALJ or evidence submitted. (*Id.* 2.) Likewise, Plaintiff's eleventh claim of error asserts that the ALJ's decision is not consistent with "applicable laws and procedures" while failing to point out the alleged inconsistencies. (*Id.* 20.) Plaintiff further states

in his eleventh claim of error that the ALJ's decision "was based in-part [*sic*] upon improper subjective opinion by the ALJ." Again, Plaintiff fails to provide any details to support his contention and, instead, relies on "the whole of the record[.]" (*Id.*)

Defendant characterizes Plaintiff's claims of error 1 and 11 as "generic statements asserting that the ALJ's decision is not supported by sufficient evidence." (Def. Br. 13, n.4.) The Court agrees, and the undersigned discusses the issue of substantial evidence in detail below. Therefore, the Court finds Plaintiff's claims of error 1 and 11 without merit.

### b. Evaluation of Errors 2 and 3

In his second and third claims of error, Plaintiff alleges that the ALJ failed to "properly and fully develop the record . . . [and] substantiate a serious mental impairment[.]" (Pl. Br. 2.) Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's treatment for anxiety during the insured period. (*Id.* 2–6.) Plaintiff provides several citations to the Record that indicate he was treated for anxiety during the insured period. (*Id.* 3–6.) Plaintiff also asserts that the ALJ should have requested Plaintiff's medical records associated with his anxiety treatment after Plaintiff testified that he was seen by a psychiatrist. (Pl.'s Reply 11.)

The Court finds that the ALJ did not err in finding that Plaintiff's anxiety is not a severe impairment. Contrary to Plaintiff's assertion that the ALJ found no evidence supporting Plaintiff's treatment for anxiety, the ALJ indeed found that Plaintiff suffered from anxiety. Specifically, the ALJ found that Plaintiff's anxiety does not rise to the level of severe impairment. (R. 37–38.) The ALJ evaluated Plaintiff's anxiety in accordance with 20 C.F.R. § 404.1520a(c), which requires the ALJ to determine the degree of functional limitation.

Even if the ALJ erroneously did not categorize additional impairments as severe, the effect was harmless. The effect was harmless because the ALJ determined Plaintiff had severe

impairments at step two[5] then considered the impairments' effects at other steps of the evaluation process. *See Williams*, 2016 WL 1258594, at *8; *Cook ex rel. A.C.*, 2013 WL 1288156, at *4.

In regards to developing the Record, the ALJ was not obligated to "go to inordinate lengths" for Plaintiff to establish anxiety as a severe impairment. *Craft v. Apfel*, 164 F.3d 624 (4th Cir. 1998). Rather, the ALJ fulfilled his duty to develop the Record by requesting medical documents from all of the treatment providers that Plaintiff identified in the Disability Report that was submitted in connection with the DIB application. (R. 757–62, 814–1412.) Moreover, the ALJ allowed Plaintiff's representative to submit additional evidence after the hearing, which contradicts Plaintiff's contention that the ALJ should have requested evidence documenting Plaintiff's anxiety. *See Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995) (noting that an ALJ need not act as the claimant's substitute counsel to fully develop the record). Therefore, the ALJ properly developed the Record.

### c. Evaluation of Error 4, 6, 10, and 12

In his fourth claim of error, Plaintiff asserts that the ALJ "failed to substantiate serious diabetic impairment." (Pl. Br. 6.) Similarly, Plaintiff's sixth claim of error states that the ALJ improperly concluded that the Plaintiff failed to comply with diabetic medication instructions. (*Id.* 8.) Notably, the ALJ found "no evidence of complications related to the diabetes that affect any body system with listing-level severity." (R. 39.) Plaintiff takes issue with the ALJ's statements that Plaintiff's diabetes was under control because, as Plaintiff argues, elevated blood glucose levels indicated Plaintiff's diabetes was not under control. (Pl. Br. 6–7.) However, Plaintiff fails to show how these elevated levels contributed to a limitation. Indeed, Plaintiff fails to demonstrate any limitation caused by the diabetes. Even assuming, *arguendo*, the ALJ did not

---

[5] The ALJ found that Plaintiff has the following severe impairments: obesity, coronary disease, degenerative disc disease, degenerative joint disease of the hips and knees, and diabetes mellitus. (R. 36.)

consider instances of Plaintiff's elevated blood glucose levels, substantial evidence exists to support the ALJ's decision that Plaintiff's diabetes is not disabling.

Additionally, Plaintiff fails to explain how the ALJ erred by concluding Plaintiff was noncompliant with medical instructions. Instead, Plaintiff argues he complied with weight loss suggestions, attempted to quit smoking, and took his diabetic medication. (Pl. Br. 9.) The Court finds Plaintiff's argument without merit because Plaintiff fails to provide a basis for how the ALJ's decision is in error.

In his tenth claim of error, Plaintiff appears to be arguing that the ALJ erred by not finding Plaintiff's coronary artery disease a disability. (Pl. Br. 16–19.) The ALJ considered Plaintiff's hospitalization for atrial fibrillation and found that Plaintiff's "cardiac condition improved significantly after the placement of the stent" and noted that symptoms such as persistent chest pain and shortness of breath were not documented. (R. 41.) Again, Plaintiff fails to specify any limitation caused by the severe impairments, arguing instead that the combination of impairments "negatively impacted Mr. Leith's ability to fulfill the jobs recommended by the [vocational expert] . . . . " (Pl.'s Reply 14.) Accordingly, the Court finds the ALJ's decision is supported by substantial evidence.

In his twelfth claim of error, Plaintiff states that the ALJ's decision is "not properly based upon the evidence as a whole" because, as Plaintiff argues, the ALJ did not consider how Plaintiff's severe impairments interact to cause limitations. (Pl. Br. 20–21.) However, the ALJ did consider Plaintiff's impairments in combination. Specifically, the ALJ noted that "even when the excessive weight is considered in conjunction with the other impairments, there was no evidence of an inability to ambulate effectively or any other symptoms" to support a finding of disabled. (R. 39.) Indeed, Plaintiff fails to offer a specific limitation caused by the combination

of his impairments. Rather, Plaintiff claims that his obesity contributed to "severe physical ailments" such as increased pain in his knees and hips. (Pl.'s Reply 14.) However, as noted below, the ALJ found no disability because Plaintiff could still walk. Therefore, the Court finds that substantial evidence supports the ALJ's decision.

### d. Evaluation of Errors 5 and 13

In his fifth and thirteenth claims of errors, Plaintiff argues that the ALJ failed to properly credit Plaintiff's testimony concerning his symptoms. (Pl. Br. 7–8, 21–23.) The Court finds the ALJ evaluated Plaintiff's subjective symptoms in accordance with 20 C.F.R. § 404.1529(b), which requires objective evidence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms and an evaluation of the intensity and persistence of the symptoms. *See Craig*, 76 F.3d at 594. The ALJ cited several medical documents that noted despite Plaintiff's joint pain, Plaintiff could walk and overall perform daily activities. (R. 41–43.) Thus, substantial evidence supports the ALJ's decision to not fully credit Plaintiff's testimony regarding the degree of pain allegedly limiting him from working.

### e. Evaluation of Errors 7 and 8

In his seventh and eighth claims of error, Plaintiff challenges how the ALJ weighed the medical opinions of Dr. Narayanan and Dr. Kadian. (Pl. Br. 9–16.) Specifically, Plaintiff argues that the opinion of his treating physician, Dr. Narayanan, should have been given more than "little weight" and that the ALJ was unclear on how much weight he afforded Dr. Kadian's opinion. (*Id.*)

Opinion evidence is relevant, and the ALJ must consider these opinions and assign them weight. SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.). As previously discussed, the ALJ must consider several factors when assigning opinion evidence a specific weight, including the

evidence with which the physician supports his or her opinion and the consistency of the opinion. *See* 20 C.F.R. § 404.1527(c), (e).

Here, the ALJ reviewed the opinion evidence of a treating physician, treating psychiatrist, and a state agency physician. Plaintiff disputes the weight given to the treating physician and state agency physician's opinions. The opinion evidence of Dr. Narayanan and Dr. Kadian are detailed above. As required, the ALJ assigned a weight to each opinion and explained the reason for assigning that weight. (R. 43–44.) Specifically, the ALJ gave significant but limited weight to the opinion evidence of Dr. Kadian because Dr. Kadian's opinion was consistent with the evidence as a whole except for Dr. Kadian's opinion that Plaintiff could climb ropes and ladders, among other things. As such, the ALJ limited Dr. Kadian's opinion where it was not consistent with Plaintiff's medical records. (*Id.*) The ALJ gave little weight to the Dr. Narayanan's opinion because it was inconsistent with Plaintiff's daily activities and not supported by clinical notes or diagnostic findings. (R. 43.) Therefore, the ALJ satisfied the requirements to consider the opinion evidence, assign each opinion a weight, and explain his reason for assigning such a weight.

### f. Evaluation of Errors 9 and 14

In his fourteenth claim of error, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. (Pl. Br. 23.) Plaintiff asserts that the ALJ "failed to properly define the sit-stand option." (*Id.* 16.) The Court finds Plaintiff's argument meritless. The ALJ explained that Plaintiff "could perform work activities that allowed him to alternate his position between sitting and standing every 20 minutes if he wished, but he could stand/walk for at least two hours each 8-hour workday." (R. 39.) The ALJ discussed the bases for his decision in accordance with 20 C.F.R. § 404.1529 (R. 39–43) and determined that the evidence did not support the degree of limitation

that Plaintiff alleged. (R. 40.) As previously discussed, the ALJ relied on Plaintiff's medical documents that evidenced Plaintiff's ability to perform daily activities, such as walking. (R. 41–44.) Therefore, the ALJ's decision concerning Plaintiff's RFC is supported by substantial evidence.

Plaintiff also emphasizes that the vocational expert concluded Plaintiff would not be able to perform as an accountant, which the Dictionary of Occupational Titles classifies as "sedentary work." Plaintiff takes issue with the vocational expert's opinion that Plaintiff can perform positions classified as "light work" because the classification assumes more strenuous work than Plaintiff's previous employment as an accountant. (Pl.'s Reply 6–7.) It appears that Plaintiff argues the ALJ's RFC must reflect all of Plaintiff's limitations credited by the ALJ. (Pl. Br. 23.)

An ALJ is required to explain his findings so that a reviewing court is able to determine whether his decisions are based on substantial evidence. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). However, as previously noted, ALJs are not required to discuss each piece of evidence in the record, and an ALJ's failure to cite to evidence does not establish that the ALJ did not consider it. *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Gullace v. Astrue*, No. 1:11cv0755, 2012 WL 691554, at *24 (E.D. Va. Feb. 13, 2012) (citing both *Phillips* and *Black*).

Here, the ALJ was not required to include every limitation credited by the ALJ. As previously discussed, the ALJ considered all of the Plaintiff's impairments, articulated the impairments he considered, discussed the opinion evidence, and assigned weight to each piece of opinion evidence along with an explanation for the weight assigned. (R. 39–44.) The ALJ considered Plaintiff's impairments, analyzed Plaintiff's limitations as to activities of daily living, among other things, and considered the opinion evidence of all the physicians and the

psychiatrist. (*Id.*) The Court finds that the ALJ has sufficiently explained his findings and that there is substantial evidence to support the ALJ's conclusions.

The ALJ's hypothetical posed to the vocational expert instructed him to assume an individual of the same age, education background, work experience, and RFC that the ALJ assigned to Plaintiff. (R. 152–56.) When determining the RFC, the Record indicates that the ALJ considered Plaintiff's limitations, including his joint paint and the opinion evidence of the physicians. (R. 39–44.) Given this instruction, the vocational expert found that Plaintiff could work as a general clerical assistant, a router, and a laundry sorter. (R. 154.) Based on the foregoing, the Court finds Plaintiff's argument that the ALJ's RFC and hypothetical question posed to the vocational expert omitted multiple material limitations is without merit.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and the *pro se* Plaintiff.

/s/
Ivan D. Davis
United States Magistrate Judge

December 28, 2017
Alexandria, Virginia